IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAPISH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, ET AL. | : | NO. 22-2320 |

### MEMORANDUM

**Padova, J.**                                                          **March 5, 2024**

      Plaintiff Michael Lapish has filed this action against the Pennsylvania Department of Corrections (the "DOC"), the former Superintendent of the State Correctional Institution Phoenix ("SCI Phoenix"), the Deputy Superintendent of SCI Phoenix, a Unit Manager of SCI Phoenix, and three correctional officers employed at SCI Phoenix. The Complaint asserts claims pursuant to 42 U.S.C. § 1983, federal disability law, and state law arising from Plaintiff's alleged beating by two of the correctional officers. Before the Court is a Motion to Dismiss one of Plaintiff's claims brought by Defendants former Superintendent Sorber, Deputy Superintendent Sipple, and Unit Manager Valliere-Fanrak (collectively, the "Supervisory Defendants"). For the following reasons, we grant the Motion without prejudice.

### I.    FACTUAL BACKGROUND

      The Amended Complaint alleges the following facts. Plaintiff, a resident of Reading, Pennsylvania, is currently incarcerated at State Correctional Institution Greene. (Am. Compl.[1] ¶ 7.) He "suffers from serious mental illnesses, including Schizophrenia, Bipolar I and/or II, Major Depressive Disorder, and Other Psychotic Disorders." (Id.) These conditions "substantially limit his thinking, communication, and brain functioning." (Id. ¶ 19.) Plaintiff has

---

[1] Citations to the Amended Complaint refer to the Amended Complaint filed by Plaintiff's counsel on July 5, 2023.

been incarcerated in the DOC since 2019 and has been housed in a Secure Residential Treatment Unit ("SRTU") since January 2022.  (Id. ¶ 18.)  An SRTU is a diversionary unit for mentally ill inmates who require a secure setting due to problematic behaviors in less secure settings.  (Id. ¶ 20.)  The unit is "intended to provide focused staff interaction, programming, and treatment" and "to convey sufficient skills in behavioral control, coping, and compliance with recommended treatment."  (Id.)

On May 13, 2022, Lapish was in the dayroom of the SRTU for a group activity and was handcuffed to the table.  (Id. ¶¶ 21, 23.)  Handcuffing inmates to the dayroom table "is standard practice in the SRTU during group activities."  (Id. ¶ 23.)  Sergeant Baity and Correctional Officer Ford, both Defendants to this lawsuit, tightened the handcuffs on Lapish until they were extremely tight.  (Id. ¶¶ 13-14, 23.)  After Lapish complained that the handcuffs were painful, Sergeant Baity, Officer Ford, and Lieutenant Gordon, who is also a Defendant to this lawsuit, retaliated against Lapish by ordering him back to his cell.  (Id. ¶¶ 12, 24.)  Sergeant Baity and Officer Ford uncuffed Lapish from the table and then slammed him to the ground and handcuffed his hands behind his back.  (Id. ¶ 26.)  After they handcuffed him, and while he was still on the ground, Sergeant Baity and Officer Ford punched Lapish in the head and kicked his body.  (Id. ¶ 27.)  Sergeant Baity also put Lapish in a chokehold and slammed his head against the ground.  (Id. ¶ 28.)  Lieutenant Gordon watched Sergeant Baity and Officer Ford beat Lapish without intervening or ordering them to stop.  (Id. ¶ 29.)  Sergeant Baity and Officer Ford subsequently dragged Lapish back to his cell without medical attention for his injuries.  (Id. ¶ 30.)

The DOC's "Access to Mental Health Care Procedures Manual" requires that '[a]ll staff selected to assigned to the SRTU to provide programming and supervision . . . will be required to

have completed the Department's Crisis Intervention Team Training (CITT)." (Id. ¶ 35 (alterations in original).) The CITT is a "'multi-day training course to provide . . . correctional officers with an understanding of the ways in which mental illness may affect the inmates they deal with daily, and provide them with skills to deescalate crisis situations." (Id. ¶ 37.) The DOC requires CITT for all correctional officers assigned to an SRTU because of the "risk of escalation in dealing with an inmate affected by mental illness." (Id. ¶ 38.) Lieutenant Gordon, Sergeant Baity, and Officer Ford did not receive CITT before they were posted to the SRTU or prior to May 13, 2022. (Id. ¶ 36.) The Supervisory Defendants were "responsible for ensuring that all correctional officers assigned to the SRTU receive[d] CITT." (Id. ¶ 39.) However, they failed to ensure that Lieutenant Gordon, Sergeant Baity, and Officer Ford received CITT when they were assigned to the SRTU or before May 13, 2022, leading to Mr. Lapish's beating. (Id. ¶¶ 40-41.)

The Complaint asserts six causes of action: a claim of excessive force in violation of the Eighth Amendment against Sergeant Baity and Officer Ford (Count I); a claim of excessive force in violation of the Eighth Amendment against Lieutenant Gordon (Count II); a claim of excessive force in violation of the Eighth Amendment against former Superintendent Sorber, Deputy Superintendent Sipple, and Unit Manager Valliere-Fanrak (Count III); a claim of violation of the Americans with Disabilities Act against the DOC (Count IV); a claim of violation of the Rehabilitation Act against the DOC (Count V); and a claim of assault and battery under Pennsylvania law against Sergeant Baity and Officer Ford (Count VI). The Supervisory Defendants have moved to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that this Count fails to allege a facially plausible claim against them for violation of Mr. Lapish's Eighth Amendment rights.

3

## II. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. MarketPlace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citations omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); and then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative

4

level.'"  Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

### III.  DISCUSSION

Count III alleges a claim for violation of Mr. Lapish's rights under the Eighth Amendment pursuant to 42 U.S.C. § 1983.  Specifically, Count III alleges that the Supervisory Defendants violated Mr. Lapish's Eight Amendment right to be free from the malicious use of physical force by failing "with deliberate indifference, to properly train the corrections officers assigned to the SRTU."  (Am. Compl. ¶ 45.)  The Supervisory Defendants argue that we must dismiss Count III because it fails to state a facially plausible claim against them pursuant to 42 U.S.C. § 1983 for violation of Mr. Lapish's Eighth Amendment rights.

"Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citation omitted).  Thus, in order to state a claim for relief under § 1983, "a plaintiff must demonstrate [that] the defendant, acting under color of state law, deprived him . . . of a right secured by the Constitution or the laws of the United States."  Id. (citations omitted).  "It is well settled that liability under § 1983 cannot be premised on the theory of respondeat superior; instead, each individual defendant 'must have personal involvement in the alleged wrongdoing.'"  Pressley v. Huber, 562 F. App'x 67, 69 (3d Cir. 2014) (quoting Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).  "However, a supervisor may be held individually liable if his failure to properly train a subordinate employee caused a deprivation of the plaintiff's constitutional rights."  Id. (citing Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997); Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir.1996)).  "To establish liability, a plaintiff must demonstrate that the defendant's failure to train amounted to

'deliberate indifference' and that such failure to train was closely related to the plaintiff's injury." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 389, 391 (1989)). A claim of "liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice." Hiller v. Sogo, Civ. A. No. 20-4445, 2021 WL 3403504, at *6 (E.D. Pa. Aug. 4, 2021) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The Supervisory Defendants argue that Count III should be dismissed because the Amended Complaint fails to plausibly allege that they are personally liable for violating Mr. Lapish's Eighth Amendment rights for failing to train Lieutenant Gordon, Sergeant Baity, and Officer Ford. Specifically, they contend that the Amended Complaint merely alleges that the Supervisory Defendants violated a DOC policy to require CITT and that the Amended Complaint fails to plausibly allege that they were aware that Lieutenant Gordon, Sergeant Baity, and Officer Ford had not been trained in CITT, had been assigned to the SRTU, or that they had personally assigned any of those Defendants to the SRTU.

The Amended Complaint alleges the following facts with respect to Plaintiff's failure to train claim against the Supervisory Defendants: (1) the Supervisory Defendants "are responsible for ensuring that all correctional officers assigned to the SRTU receive CITT[;]" (2) the Supervisory Defendants "failed to ensure that defendants Gordon, Baity, and Ford received CITT when they were assigned to the SRTU, or any time prior to May 13, 2022[;]" and (3) the Supervisory Defendant's "failure . . . to train Gordon, Baity, and Ford in crisis intervention led to Baity and Ford beating Mr. Lapish, and Gordon's acquiescence in same." (Am. Compl. ¶¶ 39-41.)

Plaintiff argues that we can infer from these allegations that the Supervising Defendants were aware of who was assigned to the SRTU and aware of who had received CITT. However, even assuming arguendo that this is correct, the Amended Complaint does not plausibly allege facts that would establish that the Supervisory Defendants' failure to ensure that Lieutenant Gordon, Sergeant Baity, and Officer Ford received CITT created an unreasonable risk of constitutional injury; that the Supervisory Defendants were aware that this failure created an unreasonable risk of constitutional injury; and that the Supervisory Defendants were indifferent to this unreasonable risk.[2] See Hiller, 2021 WL 3403504, at *6 (citing Sample, 885 F.2d at 1118). Accordingly, we conclude that the Amended Complaint fails to allege "sufficient factual matter to show that" the Supervisory Defendants violated Plaintiff's Eighth Amendment right to be free from malicious use of physical force by failing to train Lieutenant Gordon, Sergeant Baity, and Officer Ford. Warren Gen. Hosp., 643 F.3d at 84 (quotation omitted).

## IV.   CONCLUSION

For the foregoing reasons we grant the Supervisory Defendants' Motion to Dismiss Count III of the Amended Complaint. In claims arising under § 1983, a court must provide a plaintiff with leave to amend a claim subject to dismissal unless the court finds that "amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted); see also Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (stating that, where a complaint fails to state a facially plausible claim for relief, "a district court should generally 'permit a curative amendment, unless an amendment would be inequitable

---

[2] As we mentioned above, Paragraph 41 of the Amended Complaint alleges that the failure of the Supervisory Defendants "to train Gordon, Baity, and Ford in crisis intervention led to Baity and Ford beating Mr. Lapish, and Gordon's acquiescence in same." Thus, the Amended Complaint does contain an allegation, albeit conclusory, that Mr. Lapish's injuries resulted from the Supervisory Defendants' failure to train Lieutenant Gordon, Sergeant Baity, and Officer Ford.

or futile'" (quoting Phillips, 515 F.3d at 236)). We conclude that amendment would not be inequitable or futile in this case and, thus, grant Plaintiff leave to file a second amended complaint that cures the deficiencies described above. An order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.