IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LAPISH, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS<br>LIEUTENANT GORDON<br>SERGEANT BAITY<br>CORRECTIONAL OFFICER FORD, | : NO. # 22-2320 |
| Defendants | : |

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiff Michael Lapish, an incarcerated man with a psychiatric disability, brings this lawsuit under 42 U.S.C. § 1983, federal disability law, and Pennsylvania law to defend his dignity, vindicate his rights, seek compensation for his injuries, and expose the inhumane, abusive treatment endured by people incarcerated in the Pennsylvania Department of Corrections (hereinafter "Department") at State Correctional Institution (Hereinafter "SCI") Phoenix.

2. On May 13, 2022, while Mr. Lapish was incarcerated at SCI Phoenix, multiple corrections officers attacked and severely beat him while he was already restrained in handcuffs. During this attack, which occurred after Mr. Lapish complained that his handcuffs were too tight, corrections officers slammed Mr. Lapish to the ground and, while he had his hands cuffed behind him, punched his head, kicked his body, choked him, and slammed his head against the ground. Before and after the attack, officers made derogatory comments about Mr. Lapish's mental disabilities.

3. Assaults by staff against incarcerated people are regular occurrences in SCI's because the Department tolerates them. The Department fails to adequately train its staff, and corrections officers believe they can assault incarcerated people without facing any serious consequences. People with psychiatric disabilities are particularly at risk, as the Department fails to train prison staff on deescalation tactics or on how to identify and interact with individuals with mental illness.

## JURISDICTION AND VENUE

4. Plaintiff brings this action pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.; and the Rehabilitation Act, 29 U.S.C. § 794. The Court, therefore, has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to adjudicate Plaintiff's state law claims.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in Collegeville, which is in the Eastern District of Pennsylvania.

## PARTIES

7. Plaintiff Michael Lapish is a thirty-six-year-old resident of Reading, Pennsylvania currently incarcerated at SCI Greene. Mr. Lapish suffers from serious mental illnesses, including Schizophrenia, Bipolar I and/or II, Major Depressive Disorder, and Other Psychotic Disorders.

8. Defendant Pennsylvania Department of Corrections (hereinafter "Department") is a cabinet-level department of the State of Pennsylvania responsible for overseeing the operation

of, *inter alia*, 24 state correctional institutions, including SCI Phoenix. The Department receives federal funding for the operation of its institutions, including SCI Phoenix.

9. Defendant Lieutenant Gordon (hereinafter "Gordon") is a Correctional Officer of the Department who, at all times mentioned in this complaint, held the rank of Lieutenant and was assigned to SCI Phoenix.

10. Defendant Sergeant Baity (hereinafter "Baity") is a Correctional Officer of the Department who, at all times mentioned in this complaint, held the rank of Sergeant and was assigned to SCI Phoenix.

11. Defendant Correctional Officer Ford (hereinafter "Ford") is a Correctional Officer of the Department who, at all times mentioned in this complaint, held the rank of Correctional Officer I and was assigned to SCI Phoenix.

12. At all relevant times, defendants Gordon, Baity, and Ford (hereinafter collectively "Individual Defendants") were employees of the Department.

13. The Individual Defendants are sued in their individual capacity.

14. At all relevant times, all Defendants were acting under color of state law.

## STATEMENT OF FACTS

15. Plaintiff Lapish has been an inmate within the Department since 2019 and housed on the SRTU since approximately January 2022.

16. Plaintiff Lapish suffers from, *inter alia*, Schizophrenia, Bipolar I and/or II, and Major Depressive Disorder, conditions that substantially limit his thinking, communication, and brain functioning.

17. The SRTU is designed to provide management, programming, and treatment for an inmate who exhibits serious mental illness, chronic disciplinary issues, and demonstrates an inability to adapt to a general population setting. It is a diversionary unit for mentally ill inmates who do not meet commitment criteria according to the Pennsylvania Mental Health Procedures Act and require a secure setting due to their demonstrated problematic behavior in less secure environments. The unit is intended to provide focused staff interaction, programming, and treatment for this select inmate population. The focus of the SRTU is to convey sufficient skills in behavioral control, coping, and compliance with recommended treatment.

18. On May 13, 2022, Mr. Lapish was in the dayroom of the SRTU's B-Pod for a group activity.

19. Mr. Lapish enjoys group activities, which are limited in time on the SRTU, and benefits therapeutically from them.

20. Defendants Baity and Ford handcuffed Mr. Lapish to the dayroom table, which is standard practice in the SRTU during group activities. Defendants Baity and Ford then tightened Mr. Lapish's handcuffs until they were extremely tight, for the sole purpose of causing him pain, which caused bruising, bleeding, and loss of mobility.

21. When Mr. Lapish complained that his handcuffs were causing him pain, defendants Gordon, Baity, and Ford retaliated against him by ordering him back to his cell,

prematurely ending his participation in the group activity. Specifically, defendant Gordon directed defendants Baity and Ford to return Mr. Lapish to his cell. Defendants Baity and Ford ordered Mr. Lapish to back his chair away from his table so he could be moved.

22. Mr. Lapish complied and moved his chair back, at which point Defendants Baity and Ford uncuffed Mr. Lapish from the dayroom table.

23. Immediately after uncuffing him, defendants Baity and Ford slammed Mr. Lapish to the ground face down and handcuffed his hands behind his back.

24. After handcuffing Mr. Lapish's hands behind his back, and while he was still prone face-down on the floor, defendants Baity and Ford began to punch Mr. Lapish in the head and kick his body.

25. Mr. Lapish protested, but defendant Baity put him in a choke hold until he could no longer speak and slammed his head against the ground at least three times.

26. Defendant Gordon observed defendants Baity and Ford beat Mr. Lapish as described *supra* and had the opportunity to intervene, but did not intervene, or order them to stop, despite having a duty to do so, acquiescing in their assault.

27. Mr. Lapish was dragged to his cell without being treated for his injuries. Defendants Baity and Ford beat Mr. Lapish severely but denied him any medical attention. Mr. Lapish experienced significant pain and has since suffered regular migraine headaches because of the blows to his head and the slamming of his head against the ground.

28. The use of physical force by defendants Baity and Ford against Mr. Lapish, which physical force included punches to the head, kicks to the body, choking, and slamming Mr. Lapish's head into the ground multiple times, was malicious and for the purpose of causing harm.

29. Defendants Baity and Ford's use of physical force against Mr. Lapish was not a good faith effort to maintain or restore discipline, as it was initiated by Baity and Ford in retaliation for Mr. Lapish complaining that his handcuffs were too tight, and in any event Mr. Lapish was already prone face down and handcuffed when the assault occurred.

30. Defendants Gordon, Baity, and Ford punched, kicked, choked, and otherwise beat Mr. Lapish, or allowed same to occur, to punish him for complaining about his tight handcuffs, but additionally because they had not received adequate training on crisis intervention, which training would instruct defendants on deescalating interactions with mentally ill inmates and resolving conflict with the least amount of force possible.

31. Defendants Gordon, Baity, and Ford ridiculed Mr. Lapish regarding his disability. They teased him for being "mentally retarded" and claimed that no one cares about him. They have teased him for filing suit to vindicate his rights, claiming he cannot read or write and cannot spell the word "lawsuit."

32. The Department's Access to Mental Health Care Procedures Manual (hereinafter "Procedures Manual") provides, in Section 10, Subsection F, that "[a]ll staff selected or assigned to the SRTU to provide programming and supervision … will be required to have completed the Department's Crisis Intervention Team Training (CITT)…."

33. On information and belief, defendants Gordon, Baity, and Ford did not receive CITT prior to their assignment to the SRTU or prior to May 13, 2022.

34. The website for the Department's Mental Health Services Initiative explains that CITT is "an extensive multi-day training course to provide our correctional officers with an understanding of the ways in which mental illness may affect the inmates they deal with daily, and provide them with skills to deescalate crisis situations." The Department considers this training "critical" for "officers whose position within institutions put them in close contact with the mentally ill."

35. The Department mandates CITT training for all correctional officers assigned to the SRTU because it is aware of the obvious risk of escalation in dealing with an inmate affected by mental illness. The need for approaches (other than use of force) to resolve conflicts that would foreseeably arise in the SRTU is clearly apparent to the Department.

36. Defendant Department, contrary to its own Procedures Manual, and with deliberate indifference to the consequences, failed to adequately train its employees, including the Individual Defendants, with respect to deescalation tactics and how to identify and interact with individuals with mental illness.

## CAUSES OF ACTION

### Count I: Eighth Amendment – Excessive Force
### Plaintiff v. Defendants Baity and Ford

37. In violation of Mr. Lapish's rights under the Eighth Amendment to the United States Constitution, Defendants Baity and Ford maliciously used force against him on May 13,

2022. The Defendants' use of force was for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.

### Count II: Eighth Amendment – Excessive Force
### Plaintiff v. Defendant Gordon

38. The violations of Mr. Lapish's Eighth Amendment right to be free from malicious use of physical force was caused by the actions and/or inactions of Defendant Gordon, including, but not limited to, Gordon's acquiescence to, and failure to intervene in, the use of excessive force by defendants Baity and Ford in his presence.

### Count III: Americans with Disabilities Act, 42 U.S.C. § 12132
### Plaintiff v. Defendant Pennsylvania Department of Corrections

39. Mr. Lapish is a qualified individual with a disability under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131.

40. Defendant Department is a public entity under Title II of the ADA, 42 U.S.C. § 12131.

41. Defendant Department and its employees, including the Individual Defendants, knew that Mr. Lapish was a qualified individual with a disability covered by the protections of the ADA.

42. Defendant Department, with knowledge that the federally protected rights of Mr. Lapish and other incarcerated people with psychiatric disabilities were likely to be violated, subjected Mr. Lapish and others similarly situated to discrimination by reason of their disabilities by failing, with deliberate indifference, to adequately train its employees, including the

Individual Defendants, with respect to use of force and interactions between corrections officers and individuals with psychiatric disabilities.

### Count IV: Rehabilitation Act, 29 U.S.C. § 794
### Plaintiff v. Defendant Pennsylvania Department of Corrections

43. Mr. Lapish is a qualified individual with a disability within the meaning of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

44. At all times relevant to this Complaint, Defendant Department received federal funding for its operation of SCI Phoenix.

45. Defendant Department and its employees, including the Individual Defendants, knew that Mr. Lapish was a qualified individual with a disability covered by the protections of the RA.

46. Defendant Department, with knowledge that the federally protected rights of Mr. Lapish and other incarcerated people with psychiatric disabilities were likely to be violated, subjected Mr. Lapish and others similarly situated to discrimination by reason of their disabilities by failing, with deliberate indifference, to adequately train its employees, including the Individual Defendants, with respect to use of force and interactions between corrections officers and individuals with psychiatric disabilities.

### Count V: Assault and Battery under Pennsylvania Law
### Plaintiff v. Defendants Baity and Ford

47. Defendants Baity and Ford intentionally put Mr. Lapish in reasonable and immediate fear of harmful and offensive contact and intentionally touched him in a harmful and offensive manner without his consent.

48. In assaulting and battering Mr. Lapish, defendants Baity and Ford engaged in willful misconduct. Their actions were neither authorized nor required by law, nor could they have in good faith believed otherwise. They acted maliciously toward Mr. Lapish for the purpose of injuring him.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Michael Lapish respectfully requests that the Court grant the following relief: A) an award of compensatory damages against all Defendants in an amount to be determined by the finder of fact; B) an award of punitive damages against all Individual Defendants in an amount to be determined by the finder of fact; C) reasonable attorney's fees and costs; and D) such other relief the Court deems just and proper.

Respectfully Submitted,

Dated: April 03, 2024

*/s/ Alexandre Turner*
Alexandre N. Turner
alex@turnerlawofficesllc.com
1500 Walnut Street, 7th Floor West
Philadelphia, PA 19102
Telephone: (267) 225-6628
Facsimile: (215) 751-0658

*Counsel for Plaintiff, Michael Lapish*